420 F.2d 632
 DRIVERS, CHAUFFEURS AND HELPERS LOCAL NO. 639, etc., and Phillip T. Brooks, et al., Appellants,
v.
John A. PENELLO, Regional Director of the Fifth Region of the National Labor Relations Board, Appellee.
 No. 22086.
 United States Court of Appeals District of Columbia Circuit.
 Argued April 29, 1969.
 Decided October 17, 1969.
 
 Mr. John J. McBurney, Washington, D. C., for appellants. Mr. James F. Carroll, Washington, D. C., also entered an appearance for appellants.
 Mr. Julius G. Serot, Assistant General Counsel, National Labor Relations Board, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Messrs. Arnold Ordman, General Counsel, and Dominick L. Manoli, Associate General Counsel, National Labor Relations Board, were on the brief, for appellee. Messrs. Marcel Mallet-Prevost, Asst. General Counsel, and George Norman, Attorney, National Labor Relations Board, also entered appearances for appellee.
 Before BAZELON, Chief Judge, FAHY, Senior Circuit Judge, and LEVENTHAL, Circuit Judge.
 FAHY, Senior Circuit Judge:
 
 
 1
 This appeal involves a question as to the excessiveness of a fine for criminal contempt imposed by the District Court upon Drivers, Chauffeurs, and Helpers Local No. 639, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, appellant, hereinafter referred to as the Union.[1] On May 13, 1968, the Union was fined $50,000 after being found guilty by the District Court of refusing to comply with a temporary restraining order issued by the court. The order arose from a complaint filed by the appellee, a Regional Director of the National Labor Relations Board, and enjoined the Union from continued picketing of Montgomery Ward & Company's warehouses in nearby Maryland, in violation of Section 8(b) (4) (B) and Section 8(b) (7) (C) of the Labor Act, 29 U.S.C. §§ 158(b) (4) (B) and 158(b) (7) (C).[2]
 
 
 2
 The court's order was issued on Friday, April 5, 1968, one day after the assassination of Dr. Martin Luther King, which initiated violent disorders in the City of Washington, and brought to the metropolitan area an unusual period of fear and confusion, accompanied by conduct attributable to this situation and to resentment aroused by the assassination. There was testimony that the Secretary-Treasurer of the Union, at the suggestion of about six of its members, closed the Union office at about 1 o'clock on Friday because of the assassination, with a notice posted that it would remain closed until Wednesday, April 10, at 8 a. m. On Friday, April 5, the Union's shop steward was served with the restraining order, and on Saturday, April 6, and Monday, April 8, service of a copy was made on fourteen Union pickets at the Montgomery Ward warehouses. There is some evidence in connection with the attempt to serve the picketers that the assassination and the events which followed had a substantial emotional impact upon them which might have contributed to their resistance to the order.
 
 
 3
 Service on the Union's officers and attorney was similarly unsuccessful in achieving prompt compliance. A copy of the order was left at the home of the business agent of the Union in New Carrollton, Maryland. Also, it appears, a copy was "laid on the person" of the Union's attorney. He insisted, however, that he was not authorized to accept service for the Union. The process server, picking the order from the sidewalk where the attorney had thrown it, left the copy in the "Union's doorway." On Tuesday, April 9, the Secretary-Treasurer was served at his home in McLean, Virginia, and on Thursday, April 11, he was served again at the Union office. The picketing ceased on Friday, April 12, at about noon.
 
 
 4
 The District Court's finding of contempt is accordingly well founded and is not at issue on this appeal. The only question is whether the amount of the fine is excessive. The amount originally imposed, $50,000, was reduced by an order of June 27, 1968, to $20,000 after a hearing on the Union's financial worth, and a suggestion by appellee Regional Director that a lesser fine would have just as much punitive value. It is now contended that the $20,000 fine is also excessive. For the reasons to be stated we agree.
 
 
 5
 In United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947), the Supreme Court observed that when a trial judge imposes a fine for criminal contempt he should consider such factors as the necessity of achieving compliance with the court's order, the gravity of the offense, and the importance of deterring such acts in the future. When making this determination, the Court continued, the trial court should also consider the financial resources of the offending party. When a union pursues a continuous course of defiance, as in United Mine Workers, it is only proper that the dominant consideration for the trial judge should be the extent to which a fine will effect compliance. Nor is it surprising, in the United Mine Workers case, to find the Court willing to reduce the trial court's fine by 80% if the union complied with the order. On the other hand, in a case such as the one now under consideration, where compliance has been achieved before imposition of the fine, the focus instead should be upon the gravity of the offense. In this regard it has been stated that,
 
 
 6
 Where, as here, the purpose of the contempt proceeding is to vindicate the authority and dignity of the court, the punishment imposed should bear some reasonable relation to the nature and gravity of the contumacious conduct.
 
 
 7
 United States v. Conole, 365 F.2d 306, 308 (3rd Cir. 1966).
 
 
 8
 The trial court reduced the fine after considering the Union's financial worth, but seemed to overlook mitigating circumstances in determining the gravity of the offense. In its motion for reduction of sentence the Union had alleged:
 
 
 9
 That Respondent Local 639, like the other citizens of Washington, D. C. was unable to effectively control a situation between April 5, and April 9, 1968, because of the riots which then prevailed in the Metropolitan Area of Washington, D. C.
 
 
 10
 The court did not advert to this contention. The situation referred to obviously has relevance to the gravity of the offense and merits careful consideration.
 
 
 11
 The unprecedented disorders that the Washington metropolitan area witnessed in April, 1968, may well have been, as the Union claims, a reason for the closing of its office, delaying more effective service of the restraining order. Moreover, the existing conditions may also have affected the ability of the Union officials to communicate with and control its members involved in the picketing. The record below does not warrant a finding that the area disturbances were the sole or even a major cause of the Union's defiance of the court's order. Yet we should not ignore the unusual atmosphere which prevailed at the time and the emotional reactions which were evoked. While absolution of the Union clearly is not appropriate, the turmoils in the community should be considered as mitigating circumstances in evaluating the gravity of the Union's failure to be more prompt in its compliance with the court's order.
 
 
 12
 We could, of course, remand for further consideration by the District Court of the extent to which the mitigating circumstances should affect the amount of the fine imposed. But this seems unnecessary. The relationship of our authority to that of the District Court in a matter of this sort, as opposed to a case, for example, where material factors have been withheld from consideration by a jury in its fact-finding function, permits the exercise of a judgment by the appellate court which ends the matter on the basis of the existing record and conditions of common knowledge of which the court may take judicial notice. Moreover, as the Supreme Court stated in Green v. United States, 356 U.S. 165, 188, 78 S.Ct. 632, 645, 2 L.Ed.2d 672 (1958),
 
 
 13
 Appellate courts have here [in passing upon the discretion vested in the District Courts by 18 U.S.C. § 401 to punish for contempt] a special responsibility for determining that the power is not abused, to be exercised if necessary by revising themselves the sentences imposed.
 
 
 14
 Cf.United Mine Workers, supra.
 
 
 15
 Giving weight to the mitigating circumstances, we are of the opinion that the vindication of the District Court's authority through punishment of the Union, and the desired effect of such punishment upon its future conduct, would be as well served by a fine of $10,000 as one of $20,000. We accordingly revise the fine to that amount and remand the case to the District Court so that this determination may be recorded appropriately in its records.
 
 
 16
 It is so ordered.
 
 
 
 Notes:
 
 
 [1]
 Agents of the Union also are appellants. For convenience we refer to all appellants as the Union
 
 
 [2]
 Fines were also levied against several individuals, but there is before us no contest in that regard