**UNITED STATES of America, Appellee**

v.

**David ROACH, Appellant.**

**Nos. 96–3119, 96–3120.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 3, 1997.

Decided April 1, 1997.

Gerald I. Fisher, Washington, DC, argued the cause and filed the briefs for appellant David Roach.

Thomas Abbenante, Washington, DC, argued the cause for appellant Bernard Braxton. With him on the briefs was Mary E. Davis, Washington, DC.

William D. Braun, Trial Attorney, U.S. Department of Justice, Washington, DC, argued the cause and filed the brief for appellee.

Before: EDWARDS, Chief Judge, WALD and TATEL, Circuit Judges.

Opinion of the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

Two senior officials of the District of Columbia Department of Corrections appeal their criminal contempt convictions for violating a district court order prohibiting retaliation against Department employees who complain of sexual harassment. Finding sufficient evidence that appellant David Roach violated the court order by firing Officer Dorothy Smith after she complained of harassment, and neither procedural nor constitutional error, we affirm his conviction. However, because the district judge sentenced Roach to 180 days in prison—the maximum permissible term—without adequately considering relevant sentencing factors, we remand for resentencing. We re-verse appellant Bernard Braxton's conviction because the record does not support the district judge's finding that Braxton's recommendation of disciplinary proceedings against Smith was retaliatory.

I

After a jury in *Neal v. Director, District of Columbia Dep't of Corrections,* Civ. A. No. 93–2420, 1995 WL 517244 (D.D.C. Aug.9, 1995), found that the Department of Corrections had engaged in widespread sexual harassment and retaliation against female corrections officers in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1994), the district court permanently enjoined Department employees from committing further acts of harassment or retaliation. Copies of the court's order were distributed in August 1995 to Department officials, including Roach, then Warden of the Department's Maximum Security Facility, and Braxton, then Deputy Director for Institutions. Roach and Braxton each signed acknowledgments that they had received and read the order.

In April 1995, while the *Neal* litigation was pending, Dorothy Smith, a corrections officer at the Maximum Security Facility, lodged a sexual harassment complaint against fellow officer Mark Nutter. Smith claimed that Nutter, with whom she had had a personal relationship, was making unsolicited sexual advances and had, on one occasion, followed her into a bathroom. A fact-finding committee of three Department employees specially trained to investigate claims of sexual harassment found insufficient evidence to support Smith's allegations, but recommended that both Smith and Nutter receive counseling.

A month later, Smith again complained about Nutter. Recalling an earlier incident, Smith claimed that Nutter, summoning her to the prison showers, pulled her in front of a nude inmate, Maurice Murray, and made a rude comment about Murray's appearance. Reporting the incident to her supervisor, Smith wrote that "Nutter's action was both humiliating and disrespectful to inmate Murray and myself." Braxton's assistant, Patricia Johnson, selected a two-member committee to investigate the claim, which Braxton

approved. Believing that Smith alleged that Nutter had engaged in sexual misconduct against an inmate—not that he had sexually harassed Smith—Johnson chose not to select the committee members from the roster of officials trained to handle cases involving sexual harassment of employees.

Having initially confirmed Smith's account of the shower incident to her supervisor, inmate Murray recanted before the committee, claiming that the confrontation with Nutter never happened. After hearing from Smith, Nutter, and Murray, the fact-finding committee found insufficient evidence to support Smith's complaint. Concluding that Smith's allegation "stem[med] from [her] failure to make a valid case of sexual harassment against Officer Nutter," the committee recommended that Smith be disciplined because she had now "forwarded two unsupported and unfounded sexual harassment complaints."

Braxton sent the committee's report to Roach, directing him to initiate disciplinary action against Smith. Pursuant to Department regulations requiring that a separate "proposing official" determine what discipline—ranging from temporary suspension to removal—Smith should receive, Harold Nelson, an acting Deputy Warden, signed a memorandum recommending that Smith be fired for her "blatant efforts to malign the character [and] creditability [sic] of Officer Mark Nutter."

Facing discharge and exercising her rights under Department regulations, Smith requested the appointment of a "disinterested designee" to investigate the Department's charge that she had fabricated her claims against Nutter. After reviewing the reports of the two fact-finding committees and affidavits from corrections officers and inmates supplied by Smith's lawyer, the disinterested designee reported to Roach that she "was unable to draw the same firm conclusion as did the [second committee] that Officer Smith's allegation of sexual misconduct was lodged against Officer Nutter in retaliation" for the failure of her earlier complaint, and that Smith should accordingly not be terminated.

Roach rejected the designee's report, instead adopting the recommendation, purportedly written by Nelson, that Smith be fired. On September 12, 1995, two weeks after acknowledging that he had received and read a copy of the court order in *Neal*, Roach discharged Smith for "inexcusable neglect of duty." In a memorandum to the personnel office, Roach wrote that "Officer Smith's actions clearly demonstrate that her filing of a second sexual harassment charge against her former personal companion was retaliatory in nature and designed to injure Officer Nutter's creditability [sic] and character within the . . . Department."

Smith appealed her termination to Braxton. After reviewing the affidavits supplied by Smith's lawyer and the disinterested designee's recommendation, Braxton reversed Roach's decision, ordering Smith reinstated with back pay on October 11, 1995.

While her disciplinary case was pending before Roach, Smith reported to her supervisor that another officer, Michael Konyn, had told two inmates that she would be "fired in thirty days" and that all she did on the job was "walk the tiers, cut down strings, and shake her big butt." Interpreting Smith's complaint as one of sexual harassment, her supervisor forwarded a report to Braxton, who in turn requested that a third fact-finding committee investigate. The committee interviewed Officer Konyn, who denied having made any statements about Smith, and the two inmates, each of whom testified that Konyn had said Smith would be fired. The committee never asked the inmates whether Konyn had made the "big butt" comment. Finding "no probable cause to sustain the complainant's allegation of Sexual Harassment," the committee's report recommended that Smith "receive corrective and or/adverse [sic] actions for providing misleading and inacurate [sic] information," and that Konyn "receive counseling relative to Inmate/Staff relationships." Concurring with the committee's recommendations, Braxton directed Roach on October 16, 1995, to initiate disciplinary proceedings against Smith once again.

In November 1995, plaintiffs in *Neal* moved the district court to order Roach and

Braxton to show cause why they should not be held in criminal contempt for taking disciplinary action against Smith. After its own investigation, the Government recommended prosecution. Denying defense motions for recusal and for a jury trial, the district judge presiding over the *Neal* case conducted a four-day trial of the contempt charges.

Rejecting Roach's defense that he had fired Smith for fabricating the incident involving inmate Murray, the district judge found that "it really didn't matter to Mr. Roach whether the committee only found no probable cause or whether they found Officer Smith made a false claim." According to the judge, the "real reason for [Roach's] action was retaliation against Officer Smith for making [her second] sexual harassment claim." Finding the third committee report "equally flawed," the judge determined that Braxton's decision to initiate a second disciplinary action against Smith was also retaliatory. Based on these findings, the district court convicted Roach and Braxton of criminal contempt for violating the August 9 order. Without further hearing, the court sentenced both Roach and Braxton to 180 days in prison.

Having granted appellants' motions to stay execution of sentence, we now consider their appeals. Both argue that the evidence presented at trial is insufficient to support their convictions. Roach further contends that the district judge erred by not first considering civil contempt proceedings, and by denying motions to recuse himself and for a jury trial. Both Roach and Braxton argue that their six-month sentences are excessive and should be reduced. We consider each argument in turn.

## II

■ The district court convicted appellants under 18 U.S.C. § 401, which permits the court "to punish by fine or imprisonment, at its discretion, such contempt of its authority ... as ... [d]isobedience or resistance to its lawful ... order." 18 U.S.C. § 401(3) (1994). To convict a defendant of criminal contempt under this statute, the district court must find, beyond a reasonable doubt, that the defendant willfully violated a "clear and reasonably specific" order of the court. *United States v. NYNEX Corp.*, 8 F.3d 52, 54 (D.C.Cir.1993); *see also United States v. Turner*, 812 F.2d 1552, 1563 (11th Cir.1987). For a violation to be "willful," the defendant must have acted with deliberate or reckless disregard of the obligations created by the court order. *In re Holloway*, 995 F.2d 1080, 1082 (D.C.Cir.1993); *see also United States v. Greyhound Corp.*, 508 F.2d 529 (7th Cir. 1974) (willful violation is volitional act that contemnor knew or should have known was wrongful).

■ Reviewing contempt convictions for sufficiency of the evidence, we view the facts in the light most favorable to the Government, *United States v. Johnson*, 952 F.2d 1407, 1409 (D.C.Cir.1992), and apply "the familiar standard for any criminal conviction," asking whether " 'a fair-minded and reasonable trier of fact [could] accept the evidence as probative of [the] defendant's guilt beyond a reasonable doubt.' " *In re Holloway*, 995 F.2d at 1082 (quoting *In re Joyce*, 506 F.2d 373, 376 (5th Cir.1975)). Applying this standard, we find sufficient evidence to sustain Roach's conviction.

The district court's order is clear and specific, prohibiting Department employees from "taking or threatening to take adverse employment action against a person because he or she has engaged in legally protected activity." *Neal*, 1995 WL 517244, at *13. The order defines "legally protected activity" as, among other things, "making oral or written complaints about sexual harassment ... regardless of whether the conduct of which the employee complained was actually proved to have constituted [such] harassment." *Id.* Although we agree with Roach that the court order does not prohibit the Department from disciplining those who intentionally file false claims, *see Women Prisoners v. District of Columbia*, 93 F.3d 910, 931 (D.C.Cir.1996), the evidence at trial permitted the district court to conclude beyond a reasonable doubt that Roach fired Smith because she failed to persuade the fact-finding committees of her claims, not because her allegations were demonstrably false.

From the evidence, the district court could reasonably find that Roach had an inadequate basis upon which to discipline Smith for making a false claim. The second fact-finding committee failed to question inmate Murray or Smith's supervisor about Murray's original statement that Officer Nutter had, in fact, accosted him in the shower and made rude remarks about the inmate's appearance. Offering no basis for its finding that Smith's complaint "stem[med] from [her] failure to make a valid case of sexual harassment" against Officer Nutter, the committee recommended disciplining Smith because she had filed "two unsupported and unfounded sexual harassment complaints," even though it had not investigated her earlier claims and those claims had not been found false or "unfounded," but only unproven, by the first fact-finding committee. Gov. Ex. 1 (Fact–Finding Committee Report, July 13, 1995).

The court could also reasonably find that Roach did not, as he argues here, negligently rely on a flawed committee recommendation, but instead intentionally retaliated against Smith for lodging an unsuccessful complaint. Consistent with an earlier declaration, Nutter testified that Roach told him before the second committee conducted its investigation that if he were found "not guilty," he "wouldn't have to worry" about being charged by Smith "from that institution any more." Tr. 9/30/96 at 65–66; Gov. Ex. 31 (Decl. of Mark Nutter). Harold Nelson, the official who purportedly acted as the "proposing official" in Smith's case, testified that in fact Roach wrote the memorandum recommending Smith's discharge, and asked Nelson to sign it, Tr. 9/30/96 at 81–88, even though Department regulations prohibited Roach from doing so, D.C. Pers. Regs. § 1609.11 (proposing official shall not be deciding official); Tr. 10/3/96 at 56 (proposing official normally deputy warden). Although the court order defines protected activity as "making oral or written complaints about sexual harassment . . . regardless of whether the conduct of which the employee complained was actually proved to have constituted [such] harassment," *Neal,* 1995 WL 517244, at *13, Roach explained to Nelson "that the reason he was recommending [Smith's] termination was due to this being the second complaint in which the fact finding committee found no probable cause." Gov. Ex. 30 (Decl. of Harold Nelson). Implementing his own recommendation that Smith be discharged, Roach then ignored affidavits from officers and inmates supporting Smith's claims of harassment, as well as the disinterested designee's report. In reaction to the disinterested designee's conclusion that Smith not be fired, Roach wrote in the margin of the designee's report—echoing his earlier statement to Nelson—"why not . . . she has not proved either claim of sexual harassment and admits to a previous personal relationship with Nutter." Gov. Ex. 29 at 4 (Mem. from Regina Gilmore to David Roach, Aug 30, 1995).

Taken as a whole, this evidence supports the court's finding that Roach fired Smith simply because she failed to prove her allegations of sexual harassment against Nutter—an act of retaliation clearly prohibited by the court's August 9 order. Because Roach had acknowledged receiving and reviewing the court order two weeks before terminating Smith, the court could further conclude that Roach acted with deliberate or reckless disregard of the obligations imposed by the order.

■ Evaluating the evidence against Braxton, we reach a different conclusion. The district court held Braxton in contempt for affirming the third fact-finding committee's recommendation that Smith be disciplined for providing the committee with misleading and inaccurate information. Like Roach, Braxton argues that while he may have erred in relying on the third committee report, there is insufficient evidence that he initiated discipline against Smith because she complained of harassment—and not because she purportedly gave false information to the committee. In Braxton's case, we agree.

The district court began by finding that the third committee's investigation and report were "equally flawed." This finding is fully supported by the record. After two inmates corroborated Smith's claim that Officer Konyn had said that Smith would soon be fired, they were not asked whether Konyn

also made disparaging comments about Smith's appearance, the very reason a sexual harassment committee was investigating Smith's complaint. Moreover, although Konyn denied having made any statements to the inmates about Smith, the committee reported without explanation that it was Smith, not Konyn, who had provided false information. Gov. Ex. 2 (Fact–Finding Committee Report, Oct. 5, 1995).

We think more evidence is required, however, to sustain the district court's further determination that Braxton, like Roach, intended to discipline Smith simply because she filed an unsuccessful claim of harassment and, therefore, that Braxton's initiation of discipline violated the court order. The court appears to have inferred such a retaliatory intent from its finding that Braxton had earlier treated Smith's second complaint against Officer Nutter as an allegation of sexual misconduct against inmate Murray, instead of sexual harassment, so that consistent with Department regulations he could select the members of the second fact-finding committee himself rather than appointing them from a list of specially-trained employees. Viewing the evidence with the deference owed the district court as factfinder, we think this finding—that Braxton "jerry-rigged" the committee—is unsupported in the record. Tr. 10/8/96 at 16. According to Patricia Johnson's unrebutted testimony, she, not Braxton, selected the committee's members. Tr. 10/2/96 at 127. Moreover, although failing to refer the complaint to a special sexual harassment committee may have been a mistake, Smith herself had suggested through her supervisor that the incident could be construed as sexual misconduct against an inmate, Gov. Ex. 1 (Mem. from Steve Smith to Bernard Braxton, May 25, 1995), a suggestion in which Johnson concurred, Tr. 10/2/96 at 138–40. Braxton's approval of Johnson's decisions, without other evidence probative of his intent, falls short of establishing that Braxton improperly manipulated the investigation of Smith's second complaint.

Absent this finding, we do not see in the record a basis upon which the district court could have concluded beyond a reasonable doubt that Braxton's initiation of new disciplinary proceedings against Smith was retaliation for her failure to prove her claim to the third committee, particularly given his decision, not one week earlier, ordering Smith's reinstatement. Because disciplining an employee for making false statements, even if negligent, does not violate the court order, we reverse Braxton's conviction.

### III

We next turn to the remaining grounds upon which Roach challenges his conviction. Each merits but little discussion.

■ Roach claims that the district court erred by initiating criminal contempt proceedings without first considering civil sanctions. We disagree. Although courts must adhere to "the principle that 'only [t]he least possible power adequate to the end proposed' should be used in contempt cases," *Young v. United States ex rel. Vuitton & Fils S.A.*, 481 U.S. 787, 801, 107 S.Ct. 2124, 2134, 95 L.Ed.2d 740 (1987) (quoting *United States v. Wilson*, 421 U.S. 309, 319, 95 S.Ct. 1802, 1808, 44 L.Ed.2d 186 (1975)), that principle does not require courts to consider civil contempt in every case. When a court seeks to punish willful disobedience of an order, and not to coerce future conduct, criminal contempt proceedings may be appropriate without prior consideration of civil sanctions. *See NLRB v. A–Plus Roofing, Inc.*, 39 F.3d 1410, 1418 (9th Cir.1994); *United States v. Armstrong*, 781 F.2d 700, 702–06 (9th Cir. 1986). Presented with evidence of a willful violation of its order and having earlier announced to the Department its intention to hold violators criminally liable, the district court's initiation of criminal contempt proceedings against Roach was within its discretion.

■ Alleging judicial bias, Roach argues that the district judge, having presided over the *Neal* litigation, should have recused himself from Roach's case, and that the judge's failure to do so denied Roach his constitutional right to a fair and impartial trial. Reviewing the district judge's denial of Roach's recusal motion for abuse of discretion, *United States v. Pollard*, 959 F.2d 1011, 1031 (D.C.Cir.1992), and Roach's constitutional

challenge *de novo, see United States v. Donato*, 99 F.3d 426, 435 (D.C.Cir.1996), we reject both arguments.

■■■ Although Roach points to comments by the district judge indicating the judge believed the case against Roach was strong, "opinions formed by [a] judge on the basis of facts introduced or events occurring in the course of ... current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994). Because at the time the district judge made the remarks he had already reviewed Smith's motion to show cause why Roach should not be held in criminal contempt as well as the Department's opposition, he was quite familiar with the allegations and documentary evidence in Roach's case. In a controversial, sharply contested case presided over by an experienced district judge, strongly stated judicial views rooted in the record should not be confused with judicial bias. Reviewing the judge's remarks ourselves, we do not find a level of bias or hostility that, when brought to the attention of the district judge, required his recusal. Moreover, we find nothing improper in the judge's interrogation of witnesses and reactions to the evidence during trial, particularly because the court was sitting without a jury. In any event, the judge's comments reflect neither such partiality nor such antagonism as to make us doubt that Roach received a fair trial. *Cf. Donato*, 99 F.3d at 435–38.

■■■ Finally, Roach's argument that he was denied a jury trial in violation of the Sixth Amendment is without merit. "[C]riminal contempt is a petty offense unless the punishment makes it a serious one." *Bloom v. Illinois*, 391 U.S. 194, 198, 88 S.Ct. 1477, 1479, 20 L.Ed.2d 522 (1968). Because the district court announced at the outset that it would not impose a sentence of imprisonment in excess of six months, and since Roach's sentence did not in fact exceed that amount, Roach's offense was petty, and he had no right to a jury trial. *See Codispoti v. Pennsylvania*, 418 U.S. 506, 511–12, 94 S.Ct. 2687, 2690–91, 41 L.Ed.2d 912 (1974); *Cheff v. Schnackenberg*, 384 U.S. 373, 379–80, 86 S.Ct. 1523, 1525–26, 16 L.Ed.2d 629 (1966).

## IV

■■■ Although we affirm Roach's conviction, we cannot affirm his sentence. "[W]here Congress has not seen fit to impose limitations on the sentencing power for contempt[,] the district courts have a special duty to exercise such an extraordinary power with the utmost sense of responsibility and circumspection." *Green v. United States*, 356 U.S. 165, 188, 78 S.Ct. 632, 645, 2 L.Ed.2d 672 (1958). In determining an appropriate sentence for criminal contempt, district courts must consider " 'the necessity of achieving compliance with the court's order, the gravity of the offense, [and] the importance of deterring such acts in the future.' " *In re Holloway*, 995 F.2d at 1088 (quoting *Drivers, Chauffeurs & Helpers Local No. 639 v. Penello*, 420 F.2d 632, 634 (D.C.Cir.1969)). "Because of the nature of these standards," we must place "great reliance ... [on] the discretion of the trial judge." *United States v. United Mine Workers*, 330 U.S. 258, 303, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). Deference to the district court's consideration of relevant sentencing factors, however, does not lessen the importance of appellate review, for we too have "a special responsibility for determining that the [contempt] power is not abused." *Green*, 356 U.S. at 188, 78 S.Ct. at 645.

The district court sentenced Roach to 180 days imprisonment, the maximum sentence it could impose without a jury conviction. Although the district judge mentioned "the seriousness of the offense[ ]" and "the ... need to deter similar misconduct," Tr. 10/8/96 at 20, he offered no reason why these sentencing factors justified the maximum prison term, and he failed to consider the third factor—whether such a sentence was necessary to achieve compliance with the court's order. In light of the "responsibility and circumspection" required of the district court when sentencing for contempt, *Green*, 356 U.S. at 188, 78 S.Ct. at 645, and our need to rely, in the absence of statutory guidance, on the court's evaluation of relevant sentencing

factors, *United Mine Workers*, 330 U.S. at 303, 67 S.Ct. at 701, we must conclude on this record that the district court abused its discretion by giving Roach the maximum sentence.

Although having the power to revise Roach's sentence ourselves, *In re Holloway*, 995 F.2d at 1087–88, we instead remand his case to the district court for resentencing. *See Green*, 356 U.S. at 188, 78 S.Ct. at 645 (reviewing court may modify sentence or remand for reconsideration). We think the district judge who tried Roach's case, having enforced the court's orders in *Neal* for some time, occupies the best position to fashion a sentence that both vindicates the court's authority and reflects the degree of Roach's individual culpability for the Department's behavior. On remand, the district court should consider evidence, earlier credited by it, that Roach has a strong employment record and has been a supporter of the Department's female officers, including testifying on their behalf in the *Neal* case. In addition to the court's finding that Roach has been mistreated by his superiors since testifying in *Neal*, this evidence is relevant to the importance of specific deterrence in his case. Moreover, because "the seriousness of the consequences of the contumacious behavior"

is also a relevant sentencing factor, *United Mine Workers*, 330 U.S. at 303, 67 S.Ct. at 701, the court should consider that Braxton reversed Officer Smith's discharge within a month and reinstated her with back pay. Although certainly not exonerating his contemptible act, evidence that Roach's single violation of the court order resulted in no irreparable harm, and that Roach has enjoyed an otherwise exemplary career at the Department, suggests to us that a substantial prison term would be inappropriate. *Cf. In re Martin*, 70 F.3d 638 (D.C.Cir.1995) (unpublished disposition) (affirming conviction of defendant sentenced to 10 days imprisonment for *Neal* order violation).

We affirm Roach's conviction, reverse Braxton's conviction, vacate Roach's sentence, and remand to the district court for resentencing.

*So ordered.*