**Elouise Pepion COBELL, et al., Plaintiffs,**

v.

**Gale NORTON, Secretary of the Interior, et al., Defendants.**

**No. CIV.A.96–1285(RCL).**

United States District Court, District of Columbia.

Nov. 12, 2002.

Keith M. Harper, Lorna K. Babby, Dennis Marc Gingold, Elliot H. Levitas, Kilpatrick Stockton, LLP, Washington, DC, for Plaintiffs.

Robert D. Luskin, Patton Boggs LLP, Tom C. Clark, U.S. Department of Justice, Land & Natural Resources Division, Brian L. Ferrell, Andrew M. Eschen, U.S. Department of Justice, Charles Walter Findlay, III, Sarah D. Himmelhoch, U.S. Department of Justice, Land & Natural Resources Division, Sandra Marguerite Schraibman, U.S. Department of Justice Federal Programs Branch, Edith R. Blackwell, Washington, DC, John Charles Cruden, U.S. Department of Justice, Environment & Natural Resources Division, Annandale, VA, Lewis Steven Wiener, Sutherland, Asbill & Brennan, L.L.P., Washington, DC, Mark E. Nagle, Robert Craig Lawrence, Scott Sutherland Harris, U.S. Attorney's Office, J. Christopher Kohn, U.S. Department of Justice Commercial Litigation Branch, Henry A. Azar, Jr., U.S. Department of Justice Federal Programs Branch, Seth Brandon Shapiro, U.S. Department Civil Division, Jonathan Brian New, U.S. Department of Justice Civil Division, Federal Programs Branch, Jennifer R. Rivera, U.S. Department of Justice, Civil Division, Sandra Peavler Spooner, david J. Gottesman, Peter Blaze Miller, Cynthia L. Alexander, Mathew J. Fader, U.S. Department of Justice Commercial Litigation Branch, John Stemplewicz, U.S. Department of Justice, Civil Division, Amalia D. Kessler, U.S. Department of Justice Commercial Litigation Branch, Phillip Martin Seligman, U.S. Department of Justice Civil Division, Michael John Quinn, Gino D. Vissicchio, U.S. Department of Justice Civil Division, John Warshawsky, John J. Siemietkowski, U.S. Department of Justice Commercial Litigation Branch, John R. Kresse, Timothy E. Curley, U.S. Department of Justice Commercial Litigation Branch, Tracey Lyle Hilmer, U.S. Department of Justice Civil Division, Dodge Wells, U.S. Department of Justice, Herbert Lawrence Fenster, McKenna Long & Aldridge, LLP, Elizabeth Wallace Fleming, B. Michael Rauh, Manatt, Phelps & Phillips, L.L.P., Washington, DC, for Defendants.

Lawrence H. Wechsler, Janis, Schuelke & Wechsler, Donald Michael Barnes, Porter, Wright, Morris & Arthur, David Booth Beers, Shea & Gardner, Washington, DC, William Aaron Dobrovir, Sperryville, VA, Pamela J. Marple, Manatt, Phelps & Phillips, L.L.P., Timothy Patrick Garren, U.S. Department of Justice Civil Rights Division, Erik Lloyd Kitchen, Steptoe & John-

son, L.L.P., Martha Purcell Rogers, Ober, Kaler, Grimes & Shriver, Michael R. Bromwich, Fried, Frank, Harris, Shriver & Jacobson, Amy Berman Jackson, Trout & Richards, P.L.L.C., Roger Eric Zuckerman, Zuckerman Spaeder, LLP, Kathleen Elizabeth Voelker, Stephen M. Byers, Crowell & Moring, L.L.P., Leslie B. Kiernan, Zuckerman Spaeder, LLP, L. Barrett Boss, Asbill, Moffitt & Boss, Chartered, Plato Cacheris, John Francis Hundley, Baker & McKensie, Sydney Jean Hoffmann, The Law Offices of Plato Cacheris, Barbara Ann Van Gelder, Wiley Rein & Fielding, LLP, William Holt Briggs, Jr., Laura C. Zimmitti, Ross, Dixon & Bell, LLP, Thomas Edward Wilson, Berliner, Corcoran & Rowe, L.L.P., Mary Lou Soller, Miller & Chevalier, Chartered, Jeffrey David Robinson, Melissa Heitmann McNiven, Baach, Robinson & Lewis, Dwight Phillip Bostwick, Washington, DC, Larry Allen Nathens, Robert W. Biddle, Bennett & Nathans, L.L.P., Baltimore, MD, John Kenneth Zwerling, P.C., Lisa Bondareff Kemler, Zwerling & Kemler, Alexandria, VA, Russell David Duncan, Lisa Ann Freiman Fishberg, Coburn & Schertler, E. Lawrence Barcella, Jr., Paul, Hastings, Janofsky & Walker, L.L.P., David Didney Krakoff, Alessio D. Evangelista, Beveridge & Diamond, P.C., Michael D. Goodstein, Resolution Law Group, PC, Washington, DC, Bradley Stuart Lui, Morrison & Foerster, LLP, McLean, VA, Stanley M. Brand, Andrew Dewald Herman, Brand & Frulla, P.C., Marshall L. Matz, Olsson, Frank & Weeda, P.C., Jefferson McClure Gray, D. Jacques Smith, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, Emily M. Yinger, Hogan & Hartson, McLean, VA, William Leonard Gardner, Brian Michael Privor, Morgan, Lewis & Bockius, L.L.P., Hamilton Phillips Fox, III, Sutherland, Asbill & Brennan, L.L.P., Christopher J. Lovrien, Robert Christopher Cook, Jones, Day, Reavis & Pogue, Washington, DC, Dennis Marc Gingold, Washington, DC, for Non Parties.

Alan Lee Balaran, Washington, DC, for Special Master.

Richard Lee Cys, Davis Wright Tremaine, Jonathan K. Tycko, Tycko Zavareei, LLP, Washington, DC, Christopher B. Mead, London & Mead, Washington, DC, Nathaniel Davis Owens, Sr., Anniston, AL, Jill Elise Grant, Washington, DC, Neil James Ruther, Towson, MD, for Movants.

Albert Lee Bynum, Gadsden, AL, Pro se.

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the Court on Plaintiffs' Motion for Order to Show Cause Why Secretary Norton and Her Counsel Should Not Be Held in Contempt and For Sanctions For Violating the Special Master's February 8, 2001 Order and the Court's Orders of February 24, 1999 and August 12, 1999 ("Motion for Order to Show Cause") [704], and defendants' responses [714, 747] and plaintiffs' reply [718] thereto. On October 1 and 28, 2001, the Special Master issued two opinions ("Special Master Opinion" and "Supplemental Opinion") recommending that the Motion for Order to Show Cause be granted. Defendants took issue with the findings expressed in those opinions and urged the Court not to adopt the Special Master's recommendation. While the Court finds considerable merit in the Special Master's analysis and deems the actions taken by Interior to be anathema to the orderly administration of this litigation, the Court is reluctantly constrained to reject the Special Master's recommendation and deny the Motion for Order to Show Cause.

## I. BACKGROUND

The facts leading up to the Special Master Opinion and Supplemental Opinion are a matter of record that need only be briefly recapitulated. Between January 16, 2001 and January 31, 2001, the Special Master drafted three letters to Interior counsel regarding records-related communications between Interior employees and the Office of the Special Master. On January 16, 2001, the Special Master directed the Office of the Solicitor to convey to "the appropriate personnel as soon as possible" the fact that all Interior Department employees may contact the Special Master to discuss any records-related concerns. January 16, 2001 Letter from Special Master Alan Balaran to Department of Justice Attorney Charles Findlay at 1. On January 17, 2001, the Special Master reiterated this instruction and directed the Solicitor's Office to "convey: (1) that all BIA employees may contact the Office of the Special Master concerning any and all issues relating to the protection and preservation of IIM records; (2) that all such communications will be kept strictly confidential; and (3) that any employee who contacts the Special Master to report on matters relating to IIM records will be protected from retaliation pursuant to the Court's order dated May 21, 1999." January 17, 2001 Letter from Special Master Alan Balaran to Department of Justice Attorney Charles Findlay at 1. Finally, on January 31, 2001, the Special Master addressed a letter to the Department of Justice instructing that "[h]enceforth, *all* BIA/OST/OTR [Bureau of Indian Affairs/Office of the Special Trustee/Office of Trust Records] employees may contact me directly concerning *any* records-related matter in complete confidence and without fear of reprisal. Please make certain that this communication is properly circulated." January 31, 2001 Letter from Special Master Alan Balaran to Department of Justice Attorneys Phillip Brooks and Charles Findlay (emphasis in original).

Concerned that these "three unambiguous directives [failed] to elicit an affirmative response" from defendants (Special Master Opinion at 12), on February 8, 2001, the Special Master ordered "the Bureau of Indian Affairs, the Office [of] the Special Trustee and the Office of Trust Records [to] distribute an appropriate memorandum informing all employees that they may communicate directly with the Office of the Special Master concerning any IIM records-related matter in complete confidence and without fear of reprisal." ("Anti–Reprisal Order").

To verify the agency's compliance with the Anti–Reprisal Order, the Special Master, on February 13, 2001, asked defendants to "transmit to [the Office of the Special Master], no later than close of business, Wednesday, February 21, 2001, a copy of the memoranda generated by BIA, OST and OTR and a list of the locations to which these memoranda have been distributed." February 13, 2001 Letter from Special Master Alan Balaran to Department of Justice Attorney Charles Findlay. The Special Master also undertook an independent investigation which revealed that Interior had distributed the Anti–Reprisal Order to only nine of 15 randomly-contacted BIA field offices and that one of those offices had not yet distributed it to its employees.[1] On March 2, 2001, the Special Master conveyed these findings in

---

**1.** The Special Master's inquiry into the Office of Trust Funds Management's ("OTFM") compliance with the Anti–Reprisal Order revealed that all five of the offices randomly contacted by the Master were, in fact, in receipt of the order, although they received it more than one month after it had issued. *See* March 13, 2001 Letter from Special Master Alan Balaran to Department of Justice Attorney Charles Findlay at 2; Special Master Opinion at 4–5.

a letter to Interior (*see* Letter from Special Master Alan Balaran to Department of Justice Attorney Charles Findlay at 1), which prompted plaintiffs to file the underlying Motion for Order to Show Cause alleging that Interior obstructed the Special Master's attempts to notify Interior employees of their ability to communicate with the Office of the Special Master, violated the Anti–Reprisal Order by failing to distribute it, and falsely represented to the Special Master that they were in compliance with the Anti–Reprisal Order. Motion for Order to Show Cause at 3; Reply at 1.

Interior, in response to the Motion for Order to Show Cause, acknowledged an "unintentional delay in distribution" of the Anti–Reprisal Order, but maintained nonetheless that they had "substantially complied" with the Anti–Reprisal Order, in that "the vast majority of the agency offices received and distributed the order or a memorandum describing the order shortly after receiving such documents from the regional office." Defendants' Response to Plaintiffs' Motion for Order to Show Cause at 4, 5. In support, the agency tendered memoranda generated by Acting Deputy Solicitor Timothy Elliott, former Deputy Commissioner for Indian Affairs M. Sharon Blackwell, former Special Trustee Thomas Slonaker and former OST Chief of Staff Jim Douglas that purported to convey the Special Master's message.

On October 1, 2001, the Special Master issued his Opinion holding that "the lethargy [Interior] displayed in disseminating the Order" coupled with "the tone and substance of the memoranda generated by agency officials to which the Anti–Reprisal Order was attached" rendered it foreseeable "that the Special Master's initiative to encourage an unfettered dialogue with Interior employees regarding trust records would be ineffective and, thus, insubstantial." Special Master Opinion at 20.[2] This, according to the Special Master, was emblematic of the agency's "failure to 'take all reasonable means' to effectuate the Anti–Reprisal Order." *Id.*[3]

Interior disputes the Special Master's recommendation that contempt should lie, arguing that "regardless of whether Interior initially complied with the Special Master's instruction regarding distribution of the Anti–Reprisal Order ... Interior has now renewed its compliance and will continue to do so in the future." Response of the Department of the Interior to Special Master's Recommendation Dated October 1, 2001, Regarding Plaintiffs' Motion for Order to Show Cause at 4 ("Response to Special Master Opinion"). Specifically, Interior observes that it

re-distributed the Order by e-mail and is in the process of re-distributing the Order by regular, first-class United States and intra-office mail. In this second distribution, Interior included a new cover memorandum from Deputy Secretary

---

**2.** The Special Master construed the Agency's memoranda as conveyances designed not to promote a dialogue between his office and Interior employees concerning trust records, but to urge agency employees to, instead, "notify their supervisors and/or the Solicitor's Office," "contact the Fraud, Waste and Abuse Hotline ... anonymously," (Tim Elliott Memorandum at 1), or inform the Special Master that "you do not wish to talk without an attorney present to advise you." February 16, 2001 Memorandum from the Special Trustee; Special Master Opinion at 16.

**3.** The Special Master Opinion also "direct[ed] Interior to provide OTR's conformations [of receipt of the Anti–Reprisal Order] forthwith." Special Master Opinion at 23. In response, Interior filed certifications confirming receipt of the Anti–Reprisal Order by employees of the OTR Division of Electronic Records; Office of the Director; Division of Research, Litigation and Settlement; Branch of Records Service Center; and Division of Records Management Services.

of the Interior J. Steven Griles to all employees of BIA, OST and OTR, which contains language suggested by the Special Master in his opinion. . . . Also, every calendar quarter starting approximately January 22, 2002, Interior will have a message printed in the leave and earnings statements mailed to each BIA, OST, and OTR employee, reminding the employee of the terms of the Anti–Reprisal Order.

*Id.* at 3–4.

On October 28, 2001, the Special Master reviewed OTR's certifications of compliance and discovered that some employees of that office did not receive the Anti–Reprisal Order for three months, if at all. The Special Master, accordingly, issued a Supplemental Opinion that "reaffirmed the findings of the Special Master Opinion that the Department of the Interior . . . failed to comply with the February 8, 2001 Order of the Special Master . . . and call[ed] into question the conduct of those who represented otherwise." Supplemental Opinion at 1.

Confronted with this troubling record, the Court must determine whether Interior's conduct supports the issuance of a show cause order. It is with considerable reluctance that the Court answers this question in the negative.

## II. ANALYSIS

■ As a matter of law, "[t]wo requirements must be met before a party or its attorneys may be held in civil contempt. First, the court must have fashioned an order that is clear and reasonably specific. Second, the defendant must have violated that order." *Cobell v. Babbitt,* 37 F.Supp.2d 6, 9 (D.D.C.1999) (Lamberth, J.) (citations omitted). While each of these requirements must be proven by clear and convincing evidence, *Armstrong v. Execu-*

*tive Office of the President,* 1 F.3d 1274, 1289 (D.C.Cir.1993), a court is not required to impose a contempt sanction every time a violation of a court order is proved. *See Southern Railway Co. v. Brotherhood of Locomotive Firemen and Enginemen,* 337 F.2d 127, 136 (D.C.Cir.1964) (even where a party admits a technical violation of an order, there is no abuse of discretion when the court refuses to hold that party in contempt). *See also Forrest Creek Associates, Ltd. v. McLean Sav. & Loan Assoc.,* 831 F.2d 1238, 1245 (4th Cir.1987) (district court's decision not to impose sanctions on a party that violated a protective order was not an abuse of discretion, even where the court considered the intent of the party, which is not a factor in civil contempt proceedings).

■ In both his Opinion and Supplemental Opinion, the Special Master concluded that Interior disseminated the Anti–Reprisal Order in an untimely fashion and in a manner designed to sabotage its message. As to the initial concern that Interior delayed in distributing the Order, the Court agrees with the Special Master that the agency failed to promptly distribute the Special Master's directive and, in so doing, violated the principle that "all orders and judgments of courts must be complied with promptly." *Maness v. Meyers,* 419 U.S. 449, 458, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975). The record reflects, however, that once Interior had been put on notice of their infraction, it took "all reasonable steps within [their] power to comply with the court's order," *Food Lion v. United Food and Commercial Workers Int'l Union,* 103 F.3d 1007, 1017 (D.C.Cir. 1997), such as re-distributing the order and including it in the payroll statement of its employees. While the Court possesses grave misgivings regarding Interior's initial "good faith" in this matter,[4] the agen-

---

4. "To rebut a prima facie showing of civil contempt, the contemnor may assert the de-

fense of 'good faith substantial compliance.' " *Cobell, supra,* at 9.

cy's subsequent efforts to remedy the deficiencies articulated in the Special Master Opinion constituted "substantial compliance" with the Anti–Reprisal Order. And as a matter of law, "substantial compliance" negates a finding of contempt. *Cobell*, 37 F.Supp.2d at 9 (substantial compliance requires proof that a party "took all reasonable steps within its power to comply with the court's order") (citation omitted); *see also Brotherhood of Locomotive Firemen and Enginemen v. Bangor & A.R. Co.*, 380 F.2d 570, 580 (D.C.Cir.1967) ("compliance ... is a defense in coercive contempt proceedings") (citation omitted).[5]

▮ The Court next turns to the question whether Interior violated the Anti–Reprisal Order by transmitting it in a manner that urged "alternatives to openly communicating with the Special Master" (Special Master Opinion at 19). In his Opinion, the Special Master queried

> why, after more than two years since the Special Master has been communicating directly with Interior employees in accordance with the August 12, 1999 Order of Reference, that the agency chose this particular opportunity: (1) to "encourage" its employees "to notify their supervisors and/or the Solicitor's Office immediately with any information relating to the protection and preservation of IIM records;" (2) to inform its employees of their right to "use the Fraud, Waste and Abuse Hotline ... anonymously," Elliott Memorandum at 1; (3) to "encourage" its employees "to contact their local Solicitor's Office or the Solicitor's Office Division of Indian Affairs ... if they have questions about representation by counsel or interviews

by the Special Master," Blackwell Memorandum at 1; and (4) to inform its employees that they "may speak with [the Special Master] alone or, if you prefer, you may tell him that you do not wish to talk without an attorney present to advise you." February 16, 2001 Memorandum from the Special Trustee. Special Master Opinion at 16.

The Court shares the Special Master's concern over what appears to be Interior's transparent attempt to submerge the Special Master's message amidst a myriad of disclaimers and to undermine his efforts to foster an unfettered line of communication with Interior employees on records-related issues. Notwithstanding, the evidence indicates that shortly after the Special Master's Opinion was issued, Interior re-transmitted the Anti–Reprisal Order to its employees—this time with a cover memorandum from Deputy Secretary Griles—that mirrored the language suggested by the Special Master, *i.e.*, "Attached is the Special Master's February 8, 2001 Order—please comply with its directives," the language suggested by the Special Master. *See* Special Master Opinion at 17, n. 10. Interior disseminated the Anti–Reprisal Order attached to the Griles memorandum via e-mail, first-class mail and intra-office mail, and inserted a statement to all employees in every quarterly leave and earnings statement.

Here too, Interior's remediation, albeit at the prodding of the Special Master, vitiates a finding of civil contempt. *See Newman v. Graddick*, 740 F.2d 1513, 1525 (11th Cir.1984) ("the person in civil contempt must be given the opportunity to

---

**5.** Civil contempt sanctions also serve to compensate a party for losses suffered as a result of the violation of a court order. *United States v. Waksberg*, 112 F.3d 1225, 1226 (D.C.Cir.1997); *see also United States v. United Mine Workers of America*, 330 U.S. 258, 303–304, 67 S.Ct. 677, 91 L.Ed. 884 (1947)

(one of the permissible purposes of a civil contempt sanction is "to compensate the complainant for losses sustained" through a fine payable to the complainant). Plaintiffs have made no showing that defendants' delay in complying with the Anti–Reprisal Order resulted in any losses.

bring himself into compliance" before the sanctions are imposed).

■ Finally, the Court observes that, notwithstanding Interior's success at purging itself of civil contempt, its initially spotty compliance with the Anti–Reprisal Order may support a finding of criminal contempt, for "[t]he moment [a party] willfully disobeyed the court's order..., the offense of criminal contempt was complete." *United States v. Ryan*, 810 F.2d 650, 655 (7th Cir.1987). The rationale for this is that "[e]ven if the [party] had later yielded to the coercive pressure of their civil contempt sentences [it] would not erase their prior willful disobedience." *Id.* See also *Evans v. Williams*, 206 F.3d 1292, 1295 (D.C.Cir.2000) (the purpose of a criminal contempt sanction is "punitive, to vindicate the authority of the court") (*citing Gompers v. Buck's Stove and Range Co.*, 221 U.S. 418, 441, 31 S.Ct. 492, 55 L.Ed. 797 (1911)) (internal quotations omitted).

The Special Master found, and Interior does not deny, that the agency was remiss in its initial efforts to disseminate the Anti–Reprisal Order. The agency offers little in the way of an explanation for its recalcitrance beyond acknowledging that it "encountered delays in its distribution effort, which, while stemming from inadvertent causes, are regrettable." Response to Special Master Opinion at 9. The standard that guides this Court in adjudicating the appropriateness of a criminal contempt sanction is whether the evidence supports a finding that the agency "acted with deliberate or reckless disregard of the obligations created by the court order." *United States· v. Roach*, 108 F.3d 1477, 1481 (D.C.Cir.1997) (*citing In re Holloway*, 995 F.2d 1080, 1082 (D.C.Cir.1993)), *vacated in part on other grounds*, 136 F.3d 794 (D.C.Cir.1998). As stated, upon being put on notice, the agency did take swift steps to ensure distribution to all relevant employees in a manner consistent with the spirit of the Anti–Reprisal Order. The Court finds that while Interior's initial reaction to the Special Master's Anti–Reprisal Order was reprehensible and came perilously close to "deliberate or reckless disregard," their subsequent actions to remedy these deficiencies militate against such a finding. What the Court finds troubling is Interior's refusal to comply with the Anti–Reprisal Order in the first place. Instead of complying, Interior waited for its contumacious conduct to be exposed by the Special Master, and only then supplicated this Court and littered this litigation with explanations of inadvertence and post hoc regrets. Although the Court will stay its hand in this instance, future attempts to subvert the Special Master's orders or to retaliate against witnesses will neither be tolerated nor met with such charity. *See NOW v. Operation Rescue*, 929 F.Supp. 461 (D.D.C.1996) (the decision to impose a criminal contempt sanction on a party lies within the discretion of the court).

For the aforementioned reasons, the Court rejects the Special Master's recommendation and hereby DENIES plaintiffs' Motion for Order to Show Cause [704].

SO ORDERED.